MARK et al. v. HOME INS. CO.

(Circuit Court of Appeals, Second Circuit. December 3, 1894.)

No. 7.

MARINE INSURANCE—TERMS OF RISK.

    A policy of marine insurance covered the vessel, a tugboat, while in the waters of New York harbor and sundry other inland waters "as far south as Norfolk, Va." Some time after the issue of the policy, the insured requested an extension of the risk to cover the boat while working in Charleston harbor, she being then at Norfolk, but refused to pay an additional premium. A rider was then attached to the policy, without payment of further premium, permitting the boat to use the port and harbor of Charleston, "but not to cover on trips either way between Norfolk and Charleston." The boat having been lost, after sailing from Norfolk to Charleston, but whether or not within the waters of Chesapeake Bay being uncertain, *held*, that under the language of the rider, attached to the policy, the insurer was not liable for a loss occurring on a voyage from Norfolk to Charleston, even within the limits of the waters covered by the policy as originally written. 52 Fed. 170, affirmed.

    Appeal from the District Court of the United States for the Southern District of New York.

    This was a libel by George Mark and F. A. Fales, owners of the tugboat D. L. Flanagan, against the Home Insurance Company, to recover upon a policy of marine insurance. The district court rendered a decree for the defendant. Libelants appeal.

    Robert D. Benedict, for appellants.

    Samuel Park, for appellee.

    Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

    LACOMBE, Circuit Judge. The libelants seek to recover under a policy of insurance, issued by respondent, for the loss of their tug D. L. Flanagan, destroyed by fire about 3:30 a. m., June 15, 1890. It is in dispute upon the testimony whether the Flanagan took fire while still within the waters of Chesapeake Bay, or after she had passed Cape Henry, on her way out to sea. It is conceded, however, that the catastrophe happened after she had sailed from Norfolk, Va., on a voyage to Charleston, S. C. The policy of insurance is dated January 7, 1890, and is for one year from January 3, noon, 1890, to January 3, noon, 1891. It covers the D. L. Flanagan, her engines, boilers, tackle, stores, etc., "to be used mainly for general towing purposes; privileged to use and navigate the port, bays, and harbor of New York, East river, and North or Hudson rivers, waters of New Jersey, Long Island Sound and shores, and as far as New Bedford, and all inland waters as far south as Norfolk, Va., and all waters adjacent, connecting or tributary to any of the above waters. and tow vessels to and from sea, and search for vessels at sea, according to the custom of the port of New York." If it be assumed that the fire broke out while the Flanagan was still on the waters of the Chesapeake, before she had passed Cape Henry, and

while navigating under the above privilege, the loss would be covered by the policy. The main question in the case, however, is whether, under the terms of a subsequent rider annexed to the policy, she was covered while on a voyage from Norfolk to Charleston by sea, although part of the voyage lay through waters which she was privileged by the original policy to use and navigate. Some time in June, George Mark, one of the owners, wishing to use the tug in Charleston harbor, called on the agents of the insurance company, and asked for an extension of the policy, stating that the "vessel was going to Charleston to work at Charleston, in Charleston harbor." He was by them informed that it would cost more money. Some further discussion ensued, as libelant testifies, touching the increase of risk involved in such extension of the policy, libelant insisting that, in his opinion, it was not as risky working in Charleston harbor as running around Chesapeake and Delaware Bays, and adding that, if the extension would cost more money, he would cancel the policies. To an inquiry by one of respondent's agents as to which way the Flanagan was going, libelant said he would take those chances himself. The result of the interview was the leaving of the policy with the agents, to see if "they could fix it up and get up a paper." Thereafter, on June 12, 1890, a rider was duly executed and affixed to the policy, whereupon the Flanagan set out from Norfolk on her voyage to Charleston. This rider is as follows:

"New York, June 12th, 1890.

"Permission is given tug D. L. Flanagan to use port and harbor of Charleston, and to go as far as the Jetties at Charleston, but not to cover on trips either way between Norfolk and Charleston."

The libelant contends that this rider shall be interpreted so as merely to add to the privileges already accorded under the policy the additional privilege of using the port and harbor of Charleston as far as the Jetties. Manifestly, it would do this if it stopped with the words "Jetties at Charleston." The insurers have gone further, however, and added the clause "but not to cover on trips either way between Norfolk and Charleston." Increasing the risk, as they understood they did, by the rider, without additional compensation, it is natural to find that they have coupled the extension with some condition reducing their consequent new risk as far as may be; and certainly they had the right so to do. The natural meaning of the words employed is that, if the assured decide to send his tug to Charleston, the insurers will not assume the risk of the trip from Norfolk to Charleston, although they agree to insure the Flanagan thereafter when using the port and harbor of Charleston. There is but little force in the argument that the phrasing of the rider is not grammatically accurate. Business documents of this character are often expressed with more terseness than the rules of grammar permit. Undoubtedly, the subject of the verb "to cover" in the sentence under consideration is something different from the subject of the verbs "to use" (the port, etc.) and "to go" (as far as the Jetties); but it seems plain that such unexpressed subject is

"the insurers." Both instruments are to be construed together. When thus read, they contain a promise by the insurers that they will cover loss when using and navigating the ports and waters enumerated in the original policy, and, when using the port and harbor of Charleston, as far as the Jetties, but will not cover loss on trips either way between Norfolk and Charleston. The district judge, in his opinion, points out a sufficient reason for thus excepting a trip between the two places named, although part of that trip might lie through waters otherwise covered:

"The conditions involved in the preparation and the equipment of the tug for the prosecution of a trip between Norfolk and Charleston would necessarily be quite different from her equipment for river or harbor or inland business. The liability of the tug to accidents while prosecuting such a trip might be greater, not merely when on the high seas, but at all stages of the voyage."

We concur with the district judge in the conclusion that the exception expressed in the rider is clear and unambiguous; and, as the loss happened on the excepted trip, the libel was properly dismissed. Decree of district court affirmed, with costs.